UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BARBARA WYATT, as next friend of her minor daughter, S.W.<br>　　　　Plaintiff,<br>v.<br><br>KILGORE INDEPENDENT SCHOOL DISTRICT, and RHONDA FLETCHER,  DOUGLAS DUKE, CASSANDRA NEWELL,<br>in their personal capacities,<br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 6:10-cv-674<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Barbara Wyatt, as next friend of her minor daughter, S.W., brings this civil action for damages, prospective injunctive relief, and declaratory relief against the Kilgore Independent School District (ISD) and several Kilgore High School staff members for blatantly disregarding plaintiff's constitutional privacy rights under color of law, and will show:

STATEMENT OF THE CASE

1. S.W. was a happy, athletic high school sophomore. Then, on March 2, 2009, her softball coaches Rhonda Fletcher and Cassandra Newell aggressively confronted her in a locker room. While acting under color of law as Kilgore ISD staff, they blatantly disregarded S.W.'s constitutional privacy rights under the Fourteenth Amendment by intentionally disclosing her sexual orientation, without permission and without any genuine, legitimate, and compelling governmental interest, to her mother. Plaintiff sues these individuals for actual and punitive damages.  Plaintiff also sues assistant athletic director Douglas Duke, whose deliberately indifferent failure to properly train and supervise Defendants Fletcher and Newell caused the violation of S.W.'s constitutionally-protected privacy.

2. Plaintiff alleges that the Defendant teachers' actions resulted from their training by, and the policies of, the Kilgore ISD, making the District liable.

## JURISDICTION AND VENUE

3. This civil action arises under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution. This Court has jurisdiction to provide monetary and injunctive relief, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

4. This Court has jurisdiction over Plaintiff's federal claims, pursuant to 28 U.S.C. §§ 2201(a) and 2202, and over their state claims, pursuant to 28 U.S.C. §§1332 and 1367.

5. All events complained of took place within this judicial District and Division. The individual Defendants and Plaintiff reside in Gregg County. Thus, this Court is the proper venue, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff Barbara Wyatt and her daughter reside in Kilgore, Texas, in Gregg County.

7. Defendant Rhonda Fletcher is an assistant softball coach at Kilgore High School. All her actions while working as a coach were in the course and scope of her employment and under color of law. Defendant Fletcher is sued in her personal capacity for damages. She may be served process at Kilgore High School, 711 North Longview Street, Kilgore, Texas 75662.

8. Defendant Cassandra Newell is the head softball coach at Kilgore High School. All her actions while working as a coach were in the course and scope of her employment and under color of law. Defendant Newell is sued in her personal capacity for damages. She may be served process at Kilgore High School, address above.

9. Defendant Douglas Duke is the assistant athletic director at Kilgore High School. All his actions while working as assistant athletic director were in the course and scope of his employment and under color of law. Defendant Duke is sued in his personal capacity. He may be served process at Kilgore High School, address above.

10. Kilgore ISD (KISD) is responsible for setting and enforcing policies and practices governing Kilgore High School. KISD is sued for actual damages and prospective injunctive and declaratory relief. The District may be served with process at its offices, 301 N. Kilgore Street, Kilgore, Texas 75662.

## STATEMENT OF FACTS

11. S.W. has attended schools in Kilgore ISD for twelve years. She has participated in school athletics since eighth grade, including two years playing softball at Kilgore High School.

12. S.W. was an enthusiastic and well-liked player on her softball team, and led a normal teenage life. Then, on March 2, 2009, Defendants Fletcher and Newell violated S.W.'s privacy and personal autonomy in the worst possible way. Maliciously and without justification or consent, they disclosed S.W.'s sexual orientation to her mother. Their unconstitutional and unethical action caused S.W. severe mental and emotional anguish, resulted in social isolation, and robbed her of the freedom to deal with her sexuality privately, at her own pace and on her own terms.

13. On the afternoon of March 2, 2009, S.W. learned of an unscheduled off-campus softball team meeting through an announcement at the end of her classes. As she arrived at the playing field, which was off the school campus, Defendants Fletcher and Newell dismissed the rest of the team.

14. Fletcher and Newell then led S.W. into the empty locker room and locked the door behind them. They began interrogating her.

15. Fletcher asked S.W. if she was gay, and accused her of having a sexual relationship with another girl. She also claimed that S.W. was spreading gossip about this other girl being "Coach Newell's girlfriend."

3

16. The girl to whom Fletcher was referring had interacted with Newell at a number of school events.  At the time of Fletcher and Newell's confrontation, S.W. was dating that girl.

17. When S.W. denied these accusations, Fletcher and Newell reacted angrily. Fletcher stepped in close to S.W. and began yelling at her, threatening to sue her for slander and demanding that she "stop lying." Newell also made menacing gestures. S.W. was very afraid, and feared they might strike her. This behavior went on for a few minutes.

18. Fletcher and Newell then threatened S.W. that they were going to tell her mother that she was gay and having a sexual relationship with another girl. They warned S.W. that she could not play in the softball game that night until they told her mother this information. Finally, they allowed S.W. to leave the locker room.

19. Next, Fletcher called S.W.'s mother, Mrs. Wyatt, and told her to meet Newell and herself at the field, which she did approximately forty minutes later.

20. In an accusatory tone, Fletcher asked if Mrs. Wyatt knew where her daughter was. She recited her confrontation with S.W. in the locker room earlier that day. Then, Fletcher said S.W. was a lesbian. She also told Mrs. Wyatt that S.W. was dating an 18-year-old girl, and that she had arrived and later left the field with this girl.

21. While Mrs. Wyatt was still in shock after learning that her daughter had been confronted alone about her sexuality by two teachers whom she was supposed to trust, Newell offered her the contact information for this "girlfriend." She retrieved the phone number from her cell phone.

22. Soon thereafter, S.W. returned to the field. As she and Mrs. Wyatt attempted to discuss what has transpired with Newell and Fletcher, Newell abruptly dismissed them both and refused to talk further.

23. After these events, Fletcher and Newell removed S.W. from the softball team, placing her future educational opportunities in jeopardy. They lied to the softball team, claiming that S.W. had quit. Fletcher and Newell's blatant violation of S.W.'s privacy and the surrounding controversy has caused S.W. severe emotional and mental anguish. Her trust and respect in adult authority has been irreparably damaged, and she has suffered significant social ostracism. Moreover, Fletcher and Newell's actions demoralized S.W. Her academic performance suffered as a result, and her long-held ambition of attending college to study kinesiology and sports medicine, in emulation of her one-time role models, was destroyed.

24. Mrs. Wyatt promptly informed both the school's principal, the assistant athletic director Douglas Duke, and the Superintendent of Kilgore ISD, Jody Clements, of what had happened. She shared her distress that S.W. had been confronted alone by two authority figures, that they had decided without S.W.'s permission to reveal incredibly private information about her, and the negative social consequences that S.W. was suffering as a result. Clements did nothing to investigate or discipline Fletcher and Newell, and did not even inform Mrs. Wyatt of the possibility of filing a formal complaint until five months later. No disciplinary action was taken against Fletcher or Newell, effectively ratifying and condoning their behavior.

25. Mrs. Wyatt has repeatedly attempted to resolve this situation through KISD procedures. After being informed belatedly that she could file a formal complaint, she filed a "Level One" complaint with the Kilgore High School principal on August 24, 2009. The claims were dismissed as time-barred under KISD procedures, although Mrs. Wyatt had not been informed of her right to file a complaint until after the time expired.

26. Mrs. Wyatt then filed a "Level Two" complaint to Superintendent Clements on September 16, 2009, to appeal the unsatisfactory results of the Level One hearing. Clements'

5

response merely defended the actions of Fletcher and Newell, and offered no remedy to S.W. for the injury she had suffered.

27. Following the Level Two complaint and hearing, the formal justification provided for Fletcher and Newell's nonconsensual disclosure of S.W.'s sexual orientation was that they were "legally obligated to share this information with the parent." In other words, KISD's policy mandates that teachers disclose students' sexual orientation to their parents.

28. Mrs. Wyatt then filed a "Level Three" complaint to the KISD Board of Trustees on October 30, 2009. The Board acted as a rubber stamp for KISD's actions, unanimously ratifying Clements' decision and declining to hold anyone responsible for what had been done to S.W. KISD has lost its recording of this proceeding, requiring an inference in Mrs. Wyatt's favor for all matters in the missing portion of the record.  19 Tex. Admin. Code §157.1073(d) (2010).

29. On information and belief, Defendants Newell and Fletcher continue to disclose S.W.'s sexual orientation to students and school district employees in complete disregard for S.W.'s privacy rights.

30. Discrimination, bullying and the infliction of emotional trauma against students who are gay or believed to be gay is a nationally recognized problem. *See* Kathleen Sibelius and Arne Duncan, "We Must Protect Kids From Bullying," *Houston Chronicle* (Oct. 9, 2010), http://www.chron.com/disp/story.mpl/editorial/outlook/7239697.html). Educators and journalists across the country have acknowledged the scope and seriousness of this problem, as well as the President of the United States, the U.S. Department of Justice, and the Texas Legislature.  *See* Remarks of President Obama, Oct. 21, 2010, http://www.whitehouse.gov/it-gets-better-transcript; *Harrassment and Bullying in Our Schools*, U.S. Department of Justice Blog, http://blogs.usdoj.gov/blog/archives/1043; "Lawmakers Trying to Take on Bullying Again," *Houston Chronicle* (Oct. 11, 2010), http://www.chron.com/disp/story.mpl/metropolitan/

7241083.html. Defendants' actions and policies exacerbate this problem and set a very harmful example to students, teachers, and parents in Kilgore ISD.

31. KISD has a duty to promulgate, implement, and enforce policies and procedures that adequately protect students' private information against unlawful disclosure by staff. KISD, however, has indicated a policy of requiring staff to disclose students' sexual orientation to parents. Further, KISD has a policy of not training staff concerning their legal obligations in dealing with personal student information of a highly sensitive nature. Thus, KISD has breached its duty.

32. Fletcher, Newell, and KISD have absolutely no legitimate state interest in the disclosure of students' sexual orientation to parents. Doing so is a severe and traumatic violation of students' privacy, and lacks any legitimate academic, disciplinary, or administrative purpose.

FIRST CAUSE OF ACTION
-------------------------------
VIOLATION OF FEDERAL CONSTITUTIONAL RIGHT TO PRIVACY
(As to Defendants Fletcher, Newell, and Duke)

33. The constitutional right to privacy respects not only an individual's autonomy in intimate matters, but also an individual's interest in controlling the release of extremely private personal information. Courts have recognized that the Fourteenth Amendment privacy protection extends to numerous areas, including sexual orientation,[1] other personal sexual matters, medical history, drug prescription records, and pregnancy test results.

34. Fletcher and Newell's intentional disclosure of S.W.'s sexual orientation, without her permission and without any genuine, legitimate, and compelling governmental interest, was a violation of her constitutional right to privacy.

---

[1] *Sterling v. Borough of Minersville*, 232 F.3d 190 (3d Cir. 2000).

35. Fletcher and Newell intentionally, and with deliberate, conscious and callous indifference to S.W.'s constitutional right to privacy, disclosed her sexual orientation without her permission in derogation of her rights under the Fourteenth Amendment. Fletcher and Newell's actions were not merely the result of vindictiveness against S.W., but compliance with KISD's policy of disclosing students' sexual orientation to parents.

36. Defendant Duke failed to properly train Fletcher and Newell concerning their legal obligations in dealing with personal student information of a highly sensitive nature. Duke knew that such training was essential to protect against the disclosure of students' private information. This failure to train was deliberately indifferent to S.W.'s constitutional rights because proper training would ensure that information about S.W.'s sexual orientation is protected against unconstitutional disclosure by Fletcher and Newell. His failure to train directly resulted in the harm to S.W.

## SECOND CAUSE OF ACTION
-------------------------------
### VIOLATION OF FEDERAL CONSTITUTIONAL RIGHT TO PRIVACY
(As to Defendant KISD)

37. KISD requires that its staff disclose the sexual orientation of their students to parents, without consent and without any genuine, legitimate, and compelling governmental interest in doing so. KISD's policy is that staff are under a legal obligation to disclose this information. Superintendent Clements is a final policymaker for KISD. The KISD Trustees merely rubber stamp his decisions, delegating its policymaking authority to the superintendent, who is free to create and implement operating policies as he sees fit. Therefore, nonconsensual disclosure of sexual orientation is a matter of practice, custom, and the *de facto* policy of KISD. KISD's policy was a moving force behind the deprivation of S.W.'s constitutional rights.

38.  KISD has a policy of not training its staff regarding their legal obligations to protect and not disclose student information of a highly sensitive nature. Superintendent Clements is a final policymaker for KISD. The KISD Trustees merely rubber stamp his decisions, delegating its policymaking authority to the superintendent, who is free to create and implement operating policies as he sees fit. Therefore, not training its staff to protect student information of a highly sensitive nature is a matter of practice, custom, and the *de facto* policy of KISD. KISD's policy was a moving force behind the deprivation of S.W.'s constitutional rights.

### THIRD CAUSE OF ACTION
--------------------------------
### UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT
(As to Defendants Fletcher and Newell)

1.  Fletcher and Newell's actions violated S.W.'s right to be free from unreasonable seizure under the Fourth Amendment.

2.  Fletcher and Newell restrained S.W. in a locked room using their authority as school officials. Their decision to lock the locker room door and order S.W. to remain inside while Defendants confronted and threatened her was a *de facto* seizure of S.W.'s person and an unreasonable restraint on S.W.'s liberty to leave this hostile environment.

3.  Defendants acted under color of law and with official authority. Their actions were intentional and completely, deliberately, consciously, and callously indifferent to S.W.'s constitutional rights. Defendants' actions deprived her of her right to be free from unreasonable seizure, which proximately caused injury.

4.  Reasonable school officials recognize that locking and verbally restraining a student for the unlawful purpose of forcing the disclosure of the student's sexual orientation violates a clearly established right to be free from unreasonable seizure.

FOURTH CAUSE OF ACTION
--------------------------------
TEXAS FUNDAMENTAL RIGHT OF PRIVACY
(As to All Defendants)

5. Defendants' actions, stated above, violated S.W.'s fundamental privacy rights under the Bill of Rights to the Texas Constitution and under Texas common law, directly causing her injury, and they continue to do so.

DAMAGES

6. Mrs. Wyatt seeks actual damages on behalf of S.W. from Defendants Fletcher, Newell, Duke, and Kilgore ISD, jointly and severally, for the injury S.W. has suffered at their hands, including mental and emotional anguish and harm to her reputation.

7. Since the incident, S.W. has experienced severe emotional and mental anguish. The untimely and unauthorized disclosure of her sexual orientation has substantially strained her relationship with her mother, and the manner in which the disclosure occurred, humiliated S.W. and caused her to lose trust in authority.  Defendants' actions caused S.W. to suffer substantial social ostracism. Defendants inflicted severe damage on her ability to function in academic and athletic programs, undermining her opportunity to attend college.

8. Because of the willful, wanton, and malicious nature of Defendants' actions, in utter disregard for S.W.'s rights, Mrs. Wyatt claims punitive damages against each individual Defendant (but not against the District).

DECLARATORY AND INJUNCTIVE RELIEF

9. Mrs. Wyatt seeks declaratory relief that Defendants violated S.W.'s rights under the U.S. Constitution and Texas law, as described above.

10. Mrs. Wyatt seeks to enjoin Defendants from disclosing private information about S.W., including her sexual orientation, which violates the U.S. Constitution and Texas law.

ATTORNEYS' FEES

11.  Mrs. Wyatt seeks attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

PRAYER FOR RELIEF

THEREFORE, Mrs. Wyatt respectfully prays that this Court:

A.  Enter declaratory judgment that, acting under color of law and with authority, Defendants intentionally, and with complete and deliberate indifference to S.W.'s rights, disclosed private information about her sexual orientation without permission or any legitimate state interest, in violation of her constitutional right of privacy under the Fourteenth Amendment to the U.S. Constitution;

B.  Enter declaratory judgment that, acting under color of law and with authority, Defendants' custom and practice of allowing the disclosure of private information about students without permission and without any legitimate justification, violates the constitutional right of privacy guaranteed under the Fourteenth Amendment;

C.  Enter declaratory judgment that, acting under color of law and with authority, Defendants Fletcher and Newell intentionally, and with complete and deliberate indifference to Plaintiff's rights, deprived her of her right to be free from unreasonable seizure under the Fourth Amendment to the U.S. Constitution;

D.  Enter temporary and permanent injunctions against all Defendants, enjoining them from further disclosure of private information about S.W.;

E.  Award actual compensatory damages to Plaintiff, against Defendants Fletcher, Newell, Duke, and KISD, jointly and severally;

F.  Enter judgment on behalf of Plaintiff for punitive damages against each individual Defendant, but not the District itself, to punish them for their misconduct and in an amount sufficient to deter them and others from engaging in similar misconduct in the future;

G.  Order Defendants to pay Mrs. Wyatt's attorneys' fees and costs; and,

H.  Grant all other and additional relief to which Mrs. Wyatt may be entitled, at law or in equity.

Dated: December 20, 2010.

Respectfully submitted,

　　　/s/ James C. Harrington　　　
James C. Harrington
Texas State Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741-3438
　(512) 474-5073
　(512) 474-0726 (FAX)

ATTORNEY FOR PLAINTIFF